434 A.2d 805

**In re The ESTATE OF Anna M. WATSON, Deceased.**

**Appeal of Florence WALLACE.**

Superior Court of Pennsylvania.

Argued April 21, 1981.

Filed Sept. 11, 1981.

Thomas J. Reilly, Upper Darby, for appellant.

Roy Davis, Drexel Hill, for appellee.

Before WICKERSHAM, MONTEMURO and WATKINS, JJ.

MONTEMURO, Judge:

The instant case concerns the disposition of a savings account of the type commonly known as a "Totten Trust." The account was funded by decedent, Anna M. Watson; and the signature card indicated that the passbook represented a survivorship account, in favor of decedent's sister Florence Wallace, appellant in this action.

Decedent had appointed a niece, Mary Anne Widmaier, to be her executrix, and in that capacity the niece sued for return of the funds to the estate. The court below found for the executrix/appellee, but upon review this court has found that appellee failed to meet her burden of proof and the very strong presumption favoring the co-tenant of the trust must prevail. Therefore, we reverse.

The law relevant to this type of account is well-known and in fact is correctly stated by both parties and the court below. The statute, in pertinent part, states at 20 P.S. 6304:

Right of survivorship

(a) Joint Account.—Any sum remaining on deposit at the death of a party to a joint account belongs to the surviv-

ing party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent at the time the account is created.

The official advisory committee comment on this section adds the following explanation:

Official Advisory Committee Comment. The effect of (a) of this section, when read with the definition of "joint account" in Section 6301(4), *is to make an account, payable to one or more of two or more parties, a survivorship arrangement unless "clear and convincing evidence of a different contention" is offered.*

The underlying assumption is that most persons who use joint accounts want the survivor or survivors to have all balances remaining at death. *But use of a form negating survivorship would make (c) of this section applicable. Thus, a safe nonsurvivorship account form is provided. Consequently, the presumption stated by this section should become increasingly defensible.* (Emphasis supplied.)

The law as stated above distinctly favors the surviving joint tenant over the decedent's estate, especially when the account actually indicates on its face that a survivorship tenancy is contemplated. Use of a "form negating survivorship" would activate (c), which states in its entirety:

(c) Other cases.—In other cases, the death of any party to a multiple-party account has no effect on beneficial ownership of the account other than that the rights of the decedent become part of his estate.

No such form was used in the instant matter.

The presumption long-inherent in the "Totten trust" was considered destined to become "increasingly defensible" as of 1976 when the advisory committee composed its comments. It follows, therefore, that the proof of decedent's intent to create something other than a survivorship trust must become correspondingly clearer.

■ Case law holds that an executed signature card establishes a *prima facie* intervivos gift from the party funding

the account to the other joint tenant. *Scott's Estate*, 455 Pa. 429, 316 A.2d 883 (1974); *Dzierski Estate*, 449 Pa. 285, 296 A.2d 716 (1972). The decedent in the case at bar certainly executed a card indicating a joint tenancy with right of survivorship in this account which she held with her sister, appellee. This is strong *prima facie* evidence of intent to make the account a gift to her sister in the event that her sister survived her. There have been no allegations of fraud or undue influence, and there is no reason to infer that decedent's act in creating the account was other than the free and voluntary act of an informed adult. The proof of contrary intent must be clear and convincing indeed to overcome the presumption in such an instance.

■ This record simply does not have evidence sufficient to rebut the presumption of gift.

The decedent appointed her niece as executrix of her Will, and also left her real property and furniture. The Will was holographic, and although the record in not absolutely clear, it appears that a number of blank spaces were left where individual sums to heirs were never filled in.

Appellee's counsel argued that the expenses of the estate should be paid from this account, and that the residue of the estate would go to the very persons now battling over the trust account in any case. This is not an accurate view of the matter. Appellant as sole heir of the trust account is in a far different position from the one she occupies if she inherits after expenses of the estate are paid and as one of a group of intestate heirs. Appellee/executrix also has a distinct personal interest in the outcome of this action. As inheritor of the bulk of her aunt's estate she may have to settle some expenses of the estate from her own inheritance if the trust fund is a direct gift to the appellee.

Decedent at one time had another passbook account in three names: that of her niece/executrix, the niece's mother and decedent herself. The sister who was mother of the niece died, and thereafter the decedent removed the money and opened a new trust account naming appellant as co-ten-

ant. Appellant had physical possession of the passbook. The niece testified that the new account was "supposed" to have her name on it, but certainly decedent had it in her power to have arranged for three signatures on the account as before, had she so desired.

Prior to decedent's death, appellant refused to let appellee see the passbook, apparently because she considered that the account was the property of her sister and neither she nor the niece had a right to it during her sister's life.[1] After decedent's death, appellant told appellee that she would not have the right to remove the funds, and she stated that decedent had left her the money or, on another occasion, that the money was for her to split among the surviving sisters. She did, however, hand over six hundred twenty-five dollars ($625.00) in cash, which had also been entrusted to her by decedent, for funeral expenses.

Appellant also gave the passbook to niece/executrix upon an assurance that it would be returned to her. When it was not returned, she removed the money from the account with an affidavit. Appellant's behaviour does not reflect uncertainty about her right to the account funds.

The record simply does not present the kind of clear, precise and convincing evidence necessary to persuade this court that decedent intended to make this account part of her estate. No one can say positively what decedent intended, but the account on its face stated that it was a joint account with right of survivorship and the legal presumption that decedent did intend to make a gift of the funds in the account to her sister is exceedingly strong. Appellee/executrix did not meet the burden of proof necessary to overcome the presumption of gift.

The order of the lower court is reversed and the trust account funds of Account Number 151394 are to be the property of Appellant, Florence Wallace.

1. Although this attitude may seem inconsistent with an "intervivos" gift, the Totten trust typically is regarded as belonging to the funding party prior to his or her death.