## Commonwealth v. Burruss

*Eric M. Noonan, assistant district attorney*, for the commonwealth.

*Sally Winder,* for defendants.

HESS, *J.*, February 27, 1987—The motions of defendants for a new trial and in arrest of judgment have been filed following their conviction, by a jury, on a count of bad check, a violation of section 4105 of the Crimes Code, 18 Pa.C.S. §4105. The charges, filed July 30, 1986, arose out of a check written by Carol E. Burruss and passed by Curtis W. Burruss on April 15, 1984, in the amount of $9,380. The check was in payment for livestock, sold to defendants by the victim, Steve Best. Defendants assign, as error, that they were prosecuted following the expiration of the applicable two-year statute of limitations.

After the check was passed, an elaborate pattern of promises lulled the victim into a belief that the check would be made good. Satisfied that this conduct was substantial evidence of an original and ongoing fraudulent intent, the court charged the jury that they could consider that fraud in determining whether or not to acquit defendants by virtue of the

operation of the statute of limitations. The statute of limitations provisions deemed by the court to have been applicable in this case is set out at 42 Pa.C.S. §5552(a) and (c), as follows:

"(c) Exceptions—If the period prescribed in subsection (a) or (b) has expired, a prosecution may nevertheless be commenced for: (1) any offense a material element of which is either fraud or a breach of fiduciary obligation within one year after discovery of the offense by an aggrieved party or by a person who has legal duty to represent an aggrieved party and who is himself not a party to the offense, but in no case shall this paragraph extend the period of limitation otherwise applicable by more than three years."

At the trial of this case, the jury was instructed that the determination of a date constituting the "discovery of the offense" was a factual question entirely within their province. Implicit in the jury's verdict of guilty was a finding that the commonwealth had filed the within bad check charges within one year of the date that Mr. Best "discovered" the offense.

Because, in retrospect, we are satisfied that fraud is not a material element of the offense of bad check, we are required to grant the motion in arrest of judgment. This we do because of the clear language of the statute and existing precedent as opposed to arriving at a result which is justified by defendants' conduct.

Following the issuance of the subject check, it was returned to the victim due to insufficient funds in the Burruss account. Thereafter, the Burrusses advised the victim to resubmit the check. Again, and within two weeks, it was returned due to insufficient funds. Upon contacting defendants, the victim was told that they had experienced some bad

luck of their own but had every intention of paying the victim his money. Defendants then offered to have defendant hold a vehicle of theirs, worth approximately $10,000, as a showing of good faith until they repaid the money. Many weeks passed after this promise, during which the victim made numerous phone calls to defendants. Defendants eventually represented that the trailer which they had promised as security had been wrecked and would not be available.

In December 1984, at a time when the victim made it clear that he was prepared to take legal action, defendants made another proposal to resolve the matter. This consisted of sending the victim 20 post-dated checks for $500 each. The victim was to deposit the checks on a monthly basis until he had been repaid in full. The victim agreed to this proposal. Eventually, in March 1985, the victim received the 20 checks. This was only after repeated contact with defendants and a representation by them, at one point, that other checks had been lost in the mail. With the exception of the first check, dated April 15, 1985, almost all of the checks which defendants had sent in March 1985 were returned unpaid due to unsufficient funds. Beginning with the check dated June 15, 1986, the victim refrained from attempting to cash the remaining checks bearing dates through November 15, 1986.

Eventually, in the spring of 1986, it became apparent to the victim that the Burrusses had no intention of making good on their check of April 15, 1984. A complaint, charging defendants with the crimes of theft by deception and bad check, was filed on May 21, 1986. These charges were withdrawn by the district attorney's office due to jurisdictional problems in connection with the theft

charge. A single charge of bad check was filed on July 30, 1986.

The role of statutes of limitations, in Pennsylvania criminal law, was summarized in *Commonwealth v. Goldhammer,* 507 Pa. 236, 489 A.2d 1307 (1985):

"The statute of limitations, which provides predictable legislatively enacted limitations on prosecutorial delay, is the primary guarantee against the bringing of overly stale criminal charges." *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). As we stated in *Commonwealth v. Cardonick,* 448 Pa. 322, 292 A.2d 402 (1972):

"The Supreme Court observed in *Toussie v. United States,* 397 U.S. 112, 90 S.Ct. 858 [25 L.Ed. 2d 156] (1970): 'The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.' Id. at 114-15, 90 S.Ct. at 860. The burden of defending against long completed conduct is onerous because '[a]s time passes, witnesses upon whom defendant may need to rely die or move away; events are forgotten and records lost, particularly if the events seemed unimportant at the time of occurrence.' Note, The Statute of Limitations in Criminal Law: A Penetrable Barrier to Prosecution, 102 U.PA.L.REV. 630, 632 (1954). Id. at 332-33, 292 A.2d at 407-08.

"We have concluded, therefore, that statutes of limitations must be liberally construed, in favor of defendant and against the commonwealth." Id. at 330, 292 A.2d at 407.

Keeping these standards in mind, we examine the specific question raised by the case at bar. Under the plain meaning of section 5552(c) of the Judicial Code, set out above, the otherwise applicable two-year limitation period is excepted if the offense charged contains, as a material element, either fraud or breach of fiduciary obligation. In this regard, "material element of an offense" has been defined in the Crimes Code at section 103 as:

"An element that does not relate exclusively to the statute of limitations, jurisdiction, venue or to any other matters similarly unconnected with: (1) the harm or evil incident to conduct, sought to be prevented by the law defining the offense; or (2) the existence of a justification or excuse for such conduct." 18 Pa.C.S. §103.

Thus, as noted in *Goldhammer*, supra, to be considered a material element of a crime, fraud or breach of fiduciary duty must be connected with the harm or evil sought to be prevented, in this case by section 4105 of the Crimes Code. That section makes it unlawful to pass a check "knowing that it will not be honored by the drawee." 18 Pa.C.S. 4105(a). We recognize the argument that such knowledge suggests fraud. Appellate cases dealing with this issue, however, hold to the contrary.

This issue was succinctly addressed in *Commonwealth v. Mutnik*, 486 Pa. 428, 406 A.2d 516 (1979). In that case, the Supreme Court determined that the omission of the specific element of intent to defraud from the bad check charge was intentional on the part of the Legislature.

"When, as here, the words of a statute are clear and free from all possible ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. §1921(b). We therefore hold that section 4105 does not require the commonwealth to prove an intent to defraud on the part of defendant." *Commonwealth v. Mutnik,* supra, at 518.

This lead was followed in *Commonwealth v. Frank,* 322 Pa. Super. 6, 468 A.2d 1131 (1983). In that case, the Superior Court observed that where one issues a check which is subsequently dishonored, the only issue to be resolved is whether defendant knew at the time of issuance that the account was without sufficient funds. Defendant "need not have intended to defraud, but need only have had knowledge of the lack of funds." *Commonwealth v. Frank,* supra, at 1133.

There is no question, in this case, that the jury found a course of conduct, on the part of the Burrusses, designed to conceal from the victim their bad faith. Moreover, one can readily conclude that their actions were designed to avoid criminal liability by encouraging delay. It is an unfortunate result which suggests that they have been successful.

## ORDER

And now, this February 27, 1987, the motion of defendants in arrest of judgment is granted.